**Garry DAVIS, Plaintiff,**

v.

**DISTRICT DIRECTOR, IMMIGRATION & NATURALIZATION SERVICE, Defendant.**

Civ. A. No. 79–1874.

United States District Court, District of Columbia.

Dec. 19, 1979.

David Carliner, Carliner & Gordon, Washington, D.C., for plaintiff.

Eric A. Fisher, U. S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION & ORDER

FLANNERY, District Judge.

This case presents the issue whether a native born American may renounce primary allegiance to the United States and still retain rights to enter and remain in this country without a proper visa. Petitioner Garry Davis brings this suit in the form of a writ of habeas corpus. The peti-

tioner seeks the writ to relieve him of the restraint and custody imposed by the Immigration and Naturalization Service ("INS"). The Board of Immigration Appeals on May 24, 1978 voted to exclude and deport the petitioner.

The petitioner is a native of the United States and served as a bomber pilot during World War II. On May 25, 1948, he voluntarily signed an oath of renunciation of United States nationality at the American Embassy in Paris, France.

The petitioner executed the oath in conformity with then Section 401(f) of the Nationality Act. Now codified at 8 U.S.C. § 1481(a)(5), this section allows a native born American to voluntarily renounce United States citizenship. The statute reads the same today as in 1948:

> (a) . . . a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—
>
>> (5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State
>
> . . .

The petitioner signed the oath of renunciation before the United States Consul. The oath of renunciation included the statement:

> I desire to make a formal renunciation of my American nationality, as provided by Section 401(f) of the Nationality Act of 1940, and pursuant thereto I hereby absolutely and entirely renounce my nationality in the United States, and all rights and privileges thereunder pertaining and abjure all allegiance and fidelity to the United States of America.

The petitioner, on May 25, 1948, also filed a statement of his beliefs with the United States Consul in Paris. The relevant portion of this statement, which forms the basis of one of petitioner's legal arguments, reads as follows:

> I no longer find it compatible with my inner convictions . . . by remaining

solely loyal to one of these sovereign nation-states. I must extend the little sovereignty I possess, as a member of the world community, to the whole community, and to the international vacuum of its government . . . I should like to consider myself a citizen of the world.

The United States Consul issued the petitioner a Certificate of Loss of Nationality of the United States on May 25, 1948. Petitioner henceforth devoted his time and energy toward the establishment of world government and the furtherance of world citizenship. He frequently travels abroad to promote these principles and goals. He has at various times entered the United States on a permanent resident alien or on a visitor's visa.

On May 13, 1977, the petitioner attempted to enter the United States on a passport issued by the "World Service Authority", an organization formed to promote world citizenship. The Immigration and Naturalization Service conducted an exclusion hearing four days later, on May 17, 1977. The petitioner stated at the hearing that "I am the president and the chairman of the Board of an organization called the World Service Authority." The administrative law judge found the petitioner deportable. The Board of Immigration Appeals affirmed this decision on May 24, 1978. The Board, relying on 8 U.S.C. § 1182(a)(20), found the petitioner excludable because he lacked a valid document of entry. The petitioner filed the instant writ of habeas corpus on July 19, 1979.

The petitioner contends that he never expatriated himself. He alleges that the statement of beliefs he filed with the United States Embassy creates sufficient ambiguity to preclude renunciation of citizenship. The petitioner secondly argues that renunciation of citizenship requires the acquisition of another nationality. Finally, the petitioner alleges that Article 13(2) of the Universal Declaration of Human Rights, providing that "everyone has the right . . . to return to his country," requires the INS to allow the petitioner to enter and remain in the United States without any immigration papers.

The Immigration and Naturalization Service argues that the petitioner is neither a citizen nor a national of the United States. He therefore qualifies only as an alien who must be excluded under 8 U.S.C. § 1182(a)(20). This statute requires exclusion if a person does not possess a "valid unexpired immigration visa." The court agrees with the INS and will order the dismissal of the habeas petition.

## I. PETITIONER LACKS THE STATUS OF A UNITED STATES CITIZEN

8 U.S.C. § 1481(a) codifies a long standing though little recognized principle of the United States: the right of expatriation. This principle establishes the libertarian concept that a citizen may voluntarily surrender his citizenship along with the panoply of rights and obligations that attach thereto. Federal statutory law sets forth numerous avenues by which a United States citizen may voluntarily expatriate himself.[1] Federal courts require only voluntariness and sometimes intent to uphold the validity of the expatriating act.

### A. Petitioner's Intent Was Unambiguous

The petitioner alleges that his statement of beliefs, submitted on the same day he signed his oath of renunciation, creates ambiguity whether expatriation occurred. If factually correct, then the intent of the petitioner is open to question.

Whether subjective intent is a prerequisite to expatriation is an unresolved issue. Until the decision of *Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967), the Supreme Court consistently held that objective proof of the voluntary act

---

1. Each subdivision under 8 U.S.C. § 1481(a) represents a separate and independent process that leads to expatriation. These subdivisions are independently self-executing; a citizen satisfying the provisions of one subsection may be expatriated pursuant to that provision.

was enough to surrender citizenship.[2] The voluntariness concept espoused in *Afroyim* may be read, however, to encompass an inquiry into subjective intent.[3] Such an inquiry could be determinative of the validity of the expatriating act. For example, it is conceivable that a person may not intend to relinquish United States citizenship yet may objectively perform an expatriating act enumerated in 8 U.S.C. § 1481(a).

A voluntary oath of renunciation is a clear statement of desire to relinquish United States citizenship; therefore, the question of intent would normally not arise under 8 U.S.C. § 1481(a)(5). *See* 3 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 201.10b at 20–62, 73 (1979 ed.) (subjective intent, though perhaps relevant to some methods of expatriation, "irrelevant" to formal renunciation of American citizenship). In the instant case, however, the petitioner has raised the issue of intent by suggesting his statement of beliefs creates ambiguity over whether expatriation occurred. The court would be reluctant to affirm the expatriation of a person who did not intend to relinquish citizenship. We therefore address the question of intent.

■ Contrary to the petitioner's allegation, the court recognizes no ambiguity in the May 25, 1948 statement of beliefs the petitioner filed with the United States Consul. That statement leaves little doubt that the petitioner sought to relinquish his rights as a United States citizen. According to the petitioner's statement, he could no longer remain "solely loyal" to the United States; instead, "I must extend the little sovereignty I possess, as a member of the world community, to the whole community . . . ."

The statement of beliefs was devoid of any language recognizing a continued primary allegiance to the United States. Rather, the petitioner renounced his claim of sovereignty to any specific nation. His primary loyalty, according to his own language, belongs to "the world community." The court finds that language renouncing primary loyalty to the United States and affirming primary allegiance to a world community complements, rather than conflicts with, a formal oath of renunciation of citizenship. The statement of beliefs therefore creates no ambiguity; it supplements the petitioner's clear intent to renounce United States citizenship.

**B. Petitioner's Renunciation Was Voluntary**

Voluntariness is uniformly recognized as a requirement toward upholding the validity of an expatriating act. The Supreme Court accordingly has reversed the expatriation of an American involuntarily conscripted into the Japanese Army, *Nishikawa v. Dulles*, 356 U.S. 129, 138, 78 S.Ct. 612, 2 L.Ed.2d 659 (1958), reversed expatriation based solely on a conviction for military desertion absent a voluntary desire to renounce citizenship, *Trop v. Dulles*, 356 U.S. 86, 92–93, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), and reversed the expatriation of a person who voted in a foreign election but who did not voluntarily relinquish citizenship. *Afroyim v. Rusk*, 387 U.S. 253, 268, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967). The Court recognized in *Afroyim* "that the only way the citizenship it [Congress] conferred could be lost was by the voluntary renunciation or abandonment by the citizen himself." *Id.* at 266, 87 S.Ct. at 1667.

---

**2.** *See, e. g., Nishikawa v. Dulles*, 356 U.S. 129, 136, 78 S.Ct. 612, 617, 2 L.Ed.2d 659 (1958) ("Unless voluntariness is put in issue, the Government makes its case simply by proving the objective expatriating act."); *Perez v. Brownell*, 356 U.S. 44, 61, 78 S.Ct. 568, 577, 2 L.Ed.2d 603 (1958) ("Congress can attach loss of citizenship only as a consequence of conduct engaged in voluntarily"); *Savorgnan v. United States*, 338 U.S. 491, 502, 70 S.Ct. 292, 94 L.Ed.

287 (1950) (voluntariness, despite contrary intent, sufficient to uphold expatriation).

**3.** *See United States v. Matheson*, 532 F.2d 809, 814 (2d Cir.) (interprets *Afroyim* to require subjective intent), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 185 (1976); 42 Op.Atty. Gen. 397 (1969) (*Afroyim* leaves open to individual petitioner whether to raise issue of intent).

■ Voluntariness was never at issue in the instant case. The petitioner independently and without duress renounced his citizenship by signing an oath of renunciation on May 25, 1948. The court therefore finds that the petitioner's voluntary and unambiguous renunciation meets the strictures of 8 U.S.C. § 1481(a)(5).

This finding necessitates a ruling that the petitioner expatriated himself. In many circumstances, a finding of voluntariness alone would be sufficient to uphold the act of expatriation.[4] In the instant case, as explained above, it was also incumbent upon the court to examine intent. Having scrutinized these elements of expatriation, and having found that the petitioner's intent was unambiguous and the petitioner's renunciation was voluntary, the court rules the petitioner no longer qualifies as a United States citizen.

C. Renunciation of Citizenship Does Not Require Acquisition of Another Nationality

■ The Oath of Renunciation recited by the petitioner, as applied to the applicable federal law, revoked the petitioner's citizenship. 8 U.S.C. § 1481(a)(5) does not require allegiance to another nation; it only requires renunciation of United States nationality.

The framework of 8 U.S.C. § 1481(a) reinforces the plain meaning of the statute. 8 U.S.C. § 1481(a)(1) provides that an American national can lose his nationality by declaring allegiance to a foreign state, whereas 8 U.S.C. § 1481(a)(5) provides a separate category for those who renounce United States nationality. By creating two separate categories—one for the acquisition of a foreign nationality and one for the renunci-

ation of United States nationality—Congress could only have intended that each statutory section represents a separate method of expatriation.

The imposition of statelessness upon the petitioner cannot deter this court from the requirements of the federal nationality law.[5] The Supreme Court recognized that expatriation may result in statelessness in *Afroyim v. Rusk, supra.* In *Afroyim* the Court declared that "[i]n some instances, loss of citizenship can mean that a man is left without the protection of citizenship in any country in the world—as a man without a country." 387 U.S. at 268, 87 S.Ct. at 1668.

Expatriation previously resulted in statelessness in *Jolley v. Immigration and Naturalization Service*, 441 F.2d 1245 (5th Cir.), *cert. denied*, 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262 (1971). In *Jolley*, the petitioner executed a formal renunciation of citizenship before a United States Consul in Canada. *Id.* at 1249. The petitioner subsequently returned to the United States without a visa. In affirming the INS's deportation order, the Fifth Circuit recognized that Jolley's oath of renunciation alone was enough to deprive him of citizenship:

Recognizing that a citizen has a right to renounce his citizenship, Congress has provided in 8 U.S.C. § 1481(a)(6) [now (5)] formal procedures for doing so. Jolley's renunciation satisfied these procedures.

*Id.* at 1249 n. 6; *see also id. at* 1259 (Rives, J., dissenting) (dissents because unclear if petitioner intended to become stateless person). *Jolley* thus demonstrates that expatriation, effectuated pursuant to 8 U.S.C. § 1481(a)(5), requires only the renunciation of United States citizenship, and not the acquisition of a foreign nationality.

---

4. These circumstances occur when intent is not at issue. The question of intent will seldom be raised in adjudicating several types of expatriation. *See* 3 C. Gordon & H. Rosenfield, *Immigration Law & Procedure* § 20.8b at 20–61–62 (1979 ed.) (subjective intent normally irrelevant to expatriation based on acquisition of another nationality and voluntary renunciation of citizenship). In these cases, the court need only examine voluntariness. However, where, as

here, the question of intent is raised by the petitioner, we believe it is appropriate to examine intent.

5. "[T]he citizen's voluntary abandonment of his citizenship apparently will be effectuated if accomplished in compliance with law, even though statelessness may result." Gordon, The Citizen and the State, 53 *Geo. L.J.* 315, 360–61 (1965).

█ Finally, the court must remain cognizant that statelessness was the intended consequence of the petitioner's May 24, 1948 actions at the United States Embassy.[6] The petitioner's statement of beliefs explicated that rather than remaining solely loyal to one sovereign state, "I would like to consider myself a citizen of the world." In an interview with INS officials on May 13, 1977, the petitioner affirmed that "I have no nationality. I renounced my nationality 1948 in Paris, France . . . I am a World Citizen." The petitioner affirmatively sought his stateless existence. Whatever harshness may attach to statelessness is therefore inapplicable to the instant case.[7]

## II. PETITIONER IS AN ALIEN AND THUS REQUIRES PROPER IMMIGRATION PAPERS TO ENTER AND REMAIN IN THE UNITED STATES

█ Any person not a United States citizen or national is classified as an alien. 8 U.S.C. § 1101(a)(3); *see* C. Gordon & H. Rosenfield, 1 *Immigration Law and Procedure* § 2.3d at 2–22 (1979 ed.). The petitioner's voluntary expatriation deprived him of citizenship. He also lacks the status of a United States national.

█ The Section of the expatriation statute that allowed the petitioner to voluntarily relinquish citizenship, 8 U.S.C. § 1481(a)(5), speaks in terms of "making a formal renunciation of *nationality* before a

diplomatic or consular officer . . ." (emphasis added). Moreover, 8 U.S.C. § 1101(a)(22) defines a national as either a citizen or a person who owes permanent allegiance to the United States. The petitioner's expatriation deprives him of citizenship; his oath of renunciation stated that "I . . . abjure all allegiance and fidelity to the United States of America." The petitioner is therefore an alien by virtue of lacking the status of a citizen or national.

An alien must possess a proper entry document upon entering the United States. 8 U.S.C. § 1182(a)(20) provides:

. . . any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter [is excludable].

█ The petitioner's World Service Authority Passport fails to qualify as one of the documents required by 8 U.S.C. § 1182. The Board of Immigration Appeals thus properly found the petitioner excludable. We therefore affirm that ruling and order the dismissal of this habeas petition. Because the petitioner has close relations in the United States who may apply on his behalf for a visa, the petitioner may remain in this country by merely assenting to permanent resident alien status.[8]

**6.** This finding answers the objection raised in the *Jolley* dissent. Judge Rives dissented there because, *inter alia*, he was unsure whether the petitioner intended statelessness. Herein, statelessness was the calculated result of the petitioner's actions.

**7.** The petitioner's contention that Article 15 of the Universal Declaration of Human Rights requires the acquisition of another nationality to uphold expatriation is without merit. The Universal Declaration of Human Rights is a United Nations Document. 3 U.N.Doc. a/810 (1948). It is well established that the United Nations Charter does not supersede United States law. *See, e. g., Hitai v. Immigration and Naturalization Service,* 343 F.2d 466, 468 (2d Cir.), *cert. denied,* 382 U.S. 816, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965); *Vlissidis v. Anadell,* 262 F.2d 398, 400 (7th Cir. 1959).

The petitioner's argument based on Article 13(2) of the Universal Declaration of Human Rights fails for the same reason.

**8.** The petitioner raised for the first time at oral argument the theory that the Privileges and Immunities Clause of the Constitution, Article IV, Section 2, allows the petitioner to enter and remain in the United States by virtue of being a citizen of Maine. This argument, though novel, fails to take account of Congressional power to establish nationality laws.

The Privileges and Immunities clause of Article IV, Section 2, serves to prevent one state from discriminating against another state. Article I, Section 8 of the Constitution establishes that "Congress shall have power . . . To establish an uniform Rule of Naturalization." This Constitutional mandate empowers Congress to define "the processes through which

1184

The court in no way wishes to deprecate the honesty of belief or depth of conviction that the petitioner feels for the cause of world citizenship. This opinion fails to prevent the petitioner or any other person from continuing to work for world peace through the vehicle of world citizenship and world government. Any person who desires to pursue this goal while residing in the United States, however, must obey this nation's immigration and naturalization laws. We therefore only hold that if a person intentionally and voluntarily renounces United States citizenship, then such person must obtain proper visa certification to enter and remain in the United States.

citizenship is acquired or lost," to determine "the criteria by which citizenship is judged," and to fix "the consequences citizenship or noncitizenship entail." L. Tribe, *American Constitutional Law* 277 (1978).

These two constitutional provisions are not in conflict: a state may not discriminate against a citizen of another state, by, for example, restricting travel or access, but Congress has the power to determine the standards by which a person lacking the status of United States citizen shall enter and remain in the United States. Because Congress has determined that an alien must possess a proper document of entry to enter and remain in this country, the petitioner must either obtain a proper visa or be subjected to deportation.